IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Illinois corporations,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHONY SANTIAGO and MICHELLE DENAULT,<br><br>Defendants. | CIVIL NO. CV 11-00554 JMS-BMK (Declaratory Judgment)<br><br>FINDINGS AND RECOMMENDATION GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT |

**FINDINGS AND RECOMMENDATION
GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Currently pending before this Court is Plaintiffs STATE FARM FIRE & CASUALTY COMPANY ("SFFCC") and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY's ("SFMAIC") (collectively, "Plaintiffs" or "State Farm") Motion for Default Judgment ("Motion") filed on December 2, 2011.

Said Motion came on for hearing on December 28, 2011. Upon careful consideration of the Motion, the supporting memoranda, and the arguments of counsel, this Court hereby finds and recommends that the Motion be GRANTED.

## BACKGROUND

1. In this action, State Farm seeks a binding declaration that, *inter alia*, it has no duty to defend or indemnify Defendants ANTHONY SANTIAGO ("Santiago") and MICHELLE DENAULT ("Denault") under two insurance policies issued by State Farm in connection with any claims that may arise out of a robbery and assault committed by Defendant Santiago on or about August 3, 2010.

2. In the instant Motion, State Farm seeks default judgment against Defendants Santiago and Denault pursuant to Rule 55 of the Federal Rules of Civil Procedure ("FRCP") on the ground that Defendants have not answered or otherwise pled in response to Plaintiffs' Complaint for Declaratory Judgment, filed herein on September 13, 2011 ("Complaint"), and that the undisputed facts establish, as a matter of law, that there is no coverage available under the subject insurance policies.

### The Policies

### The State Farm Auto Policy

3. At all relevant times, Santiago was insured by SFMAIC under a State Farm Auto Policy, No. 0673-661-51A, applicable to Santiago's 1993 Toyota Xtra Cab Pickup (the "Auto Policy").

4. The Auto Policy was written on Coverage Form 9851A. The coverage sections of the Auto Policy were preceded by the "Definitions" section. The "Definitions" section of the Auto Policy states, in relevant part, as follows:

> **DEFINITIONS**
>
> **Bodily Injury** means bodily injury to a **person** and sickness, disease, or death that results from it.
>
> **LIABILITY COVERAGE**
> **Additional Definition**
>
> **Insured** means:
>
> 1. **you** and **resident relatives** for:
>
>    a. the ownership, maintenance, or use of:
>
>       (1) **your car**

5. The insuring agreement of the Auto Policy provides as follows:

> **Insuring Agreement**
>
> 1. **We** will pay:
>
>    a. damages, including punitive or exemplary damages, an **insured** becomes legally liable to pay because of:
>
>       (1) **bodily injury** to others; and
>
>       (2) damage to property
>
> caused by an accident that involves a vehicle for which that **insured** is provided Liability Coverage by this policy

6. The Auto Policy also contains the following exclusions:

## EXCLUSIONS

THERE IS NO COVERAGE FOR AN **INSURED**:

1. WHO INTENTIONALLY CAUSES **BODILY INJURY** OR DAMAGE TO PROPERTY

<u>The State Farm Personal Liability Umbrella Policy</u>

7. State Farm Fire & Casualty Company ("SFFCC") issued a Personal Liability Umbrella Policy to Denault, No. 51BS84204 ("PLUP"), that was in effect at all relevant times herein.

8. Denault is Santiago's mother and was the named insured on the PLUP. Santiago also qualified as an insured under the PLUP as a resident relative of Denault.

9. The PLUP was written on Coverage Form FP-7950.2. The coverage sections of the PLUP were preceded by the "Definitions" section. The "Definitions" section of the PLUP states, in relevant part, as follows:

### DEFINITIONS

1. "**automobile**" means a land motor vehicle or trailer, designed for use primarily on public roads.

2. "**bodily injury**" means physical injury, sickness or disease to a person, including death resulting therefrom.

"**Bodily Injury**" does not include:

…

d. **personal injury**.

6.  "**insured**" means:

    a.  **you** and **your relatives** whose primary residence is **your** household;

7.  "**loss**" means:

    a.  an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

    b.  the commission of an offense which first results in **personal injury** during the policy period. A series of similar or related offenses is considered to be one **loss**.

8.  "**personal injury**" means injury other than **bodily injury** arising out of one or more of the following offenses:

    a.  false arrest, false imprisonment, wrongful eviction, wrongful detention of a person;

    b.  abuse of process, malicious prosecution;

    c.  libel, slander, defamation of character; or

    d.  invasion of a person's right of private occupancy by physically entering into that person's personal residence.

10. "**property damage**" means physical damage to or destruction of tangible property, including the loss of use of such property….Theft or conversion of property by an **insured** is not **property damage**.

12. "**relative**" means any person related to **you** by blood, adoption, or marriage.

10. The insuring agreement of the PLUP provides as follows:

Coverage L – Personal Liability

If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**.

11. The "Exclusions" section to the PLUP provided, in relevant part:

**EXCLUSIONS**

There is no coverage under this policy for any:

14. **bodily injury** or **property damage** which is:

a. either expected or intended by the **insured**; or

b. the result of any willful and malicious act of the **insured**;

…

17. **personal injury** when the **insured** acts with specific intent to cause any harm

The August 3, 2010 Incident

12. On or about August 3, 2010, Santiago was operating his 1993 Toyota Xtra Cab Pickup in Waikiki, accompanied by his passenger, Kaulana Akau ("Akau").

13. Around 12:00 a.m. on August 3, 2010, Santiago and Akau encountered Bradley Easterling ("Easterling") and his friend Dustin Hernandez ("Hernandez"), both of whom were walking on Kuhio Avenue, and offered to give

6

them a ride to Easterling's truck, which was parked on Beachwalk Road in Waikiki.

14. Easterling and Hernandez accepted and jumped in the bed of the truck. When they arrived at Beachwalk, Easterling and Hernandez jumped out from the bed of the pickup.

15. Easterling then went to shake Santiago's hand to thank him for the ride, but as Easterling was turning to return to his truck, Santiago started driving off while holding Easterling's backpack.

16. Easterling maintained his hold on the backpack and ended up being dragged alongside Santiago's truck. Easterling was finally able to release his grip on the backpack at the end of Kalia Road.

17. Easterling allegedly suffered injuries as a result of the incident on August 3, 2010, including road rash to both sides of his lower body and multiple surgeries.

18. Easterling has notified Plaintiffs that he is making a claim against Santiago for his injuries.

19. Approximately two days after the incident on August 3, 2010 in Waikiki, Santiago was arrested and charged with first-degree robbery and first-degree assault, violations of sections 708-840 and 707-710 respectively, of the Hawaii Revised Statutes.

## The Criminal Convictions

20. A criminal matter against Santiago was formally initiated on August 16, 2010 in State of Hawaii v. Anthony Santiago, Crim. No. 10-1-001319.

21. On September 14, 2011, a jury convicted Santiago of Second Degree Robbery and First Degree Assault.

22. H.R.S. § 708-841 defines the offense of robbery in the second degree:

**Robbery in the second degree.** (1) A person commits the offense of robbery in the second degree if, in the course of committing theft or non-consensual taking of a motor vehicle:
    (a) The person uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance;
    (b) The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property; or
    (c) The person recklessly inflicts serious bodily injury upon another.

23. H.R.S. § 707-710 defines the offense of assault in the first-degree:

**Assault in the first degree.** (1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person.

## Procedural History

24. On September 13, 2011, Plaintiffs filed their Complaint for Declaratory Judgment.

25. The Complaint was personally served on Denault on September 14, 2011, and on Santiago through Denault on the same day.

26. Defendants did not answer or otherwise move to defend against the Complaint, and on November 2, 2011, default was entered against Santiago and Denault by the Clerk of this Court.

## DISCUSSION

27. FRCP 55 provides, in pertinent part, as follows:

> (a) **Entering a Default**. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) **Entering a Default Judgment**.
>
> (1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

28. Defendants have not answered Plaintiffs' Complaint herein and, in fact, have made no appearance whatsoever in this action. Moreover, Defendants have not moved to set aside the default entered against them by the Clerk of the Court.

## Coverage Issues

29. Insurance policies are subject to the general rules of contract construction. The terms of insurance policies must be interpreted according to their plain, ordinary and accepted sense in common speech, unless it appears from the language of the policies that a different meaning is intended. Dawes v. First Ins. Co. of Hawaii, 77 Haw. 117, 121, 883 P.2d 38, 42 (1994), reconsideration denied, 889 P.2d 66 (Haw. 1994). A court cannot rewrite an insurance contract between the parties. Fortune v. Wong, 68 Haw. 1, 11, 702 P.2d 299, 306 (1985). Furthermore, a court must respect the plain terms of a policy and "not create ambiguity where none exists." Sentinel Ins. Co. v. First Ins. Co. of Hawaii, 76 Haw. 277, 298, 875 P.2d 894, 915 (Haw. 1994).

30. An insurer's duty to defend is contractual in nature. Commerce & Indus. Ins. Co. v. Bank of Hawaii, 73 Haw. 322, 325, 832 P.2d 733, 735 (1992). The duty to defend arises whenever there is a potential for coverage, and thus does not depend on whether liability is ultimately established. Id. Where one or more claims asserted in a lawsuit raise a potential for indemnification liability of the

insurer to the insured, the insurer has a duty to accept the defense of the entire lawsuit, even though other claims asserted in the suit might fall outside the policy's coverage. First Ins. Co. of Hawaii v. State, 66 Haw. 413, 417, 665 P.2d 648, 652 (1983). Conversely, where the pleadings fail to allege *any* basis for recovery within the coverage of the subject policy, the insurer has no obligation to defend. Hawaiian Holiday Macadamia Nut Co. v. Indust. Indem. Co., 76 Haw. 166, 169, 872 P.2d 230, 233 (1994).

31.  To give rise to coverage under a liability insurance policy, a complaint must allege *facts* that would bring the plaintiff's claim within the coverage of the subject policy. Bayudan v. Tradewind Ins. Co., 87 Haw. 379, 387, 957 P.2d 1061, 1069 (App. 1998). The burden is on the insured to establish coverage under an insurance policy. Sentinel, 76 Hawai'i at 291 n.13, 875 P.2d at 909 n.13. The insurer has the burden of establishing the applicability of an exclusion. Id. at 297, 875 P.2d at 914.

The Incident Did Not Involve An "Accident"
Within The Meaning Of The Policies

32.  Both the Auto Policy and the PLUP provide coverage for "bodily injury" caused by an "accident." The PLUP does not define "accident", but the Auto Policy defines a "motor vehicle accident" to mean "an accident resulting from the operation, maintenance, or use of a motor vehicle[.]"

33. In determining whether a claim arises from an "accident" within the coverage of a liability insurance policy, Hawaii courts view the facts underlying the claim objectively, from the standpoint of the insured. Hawaiian Holiday, 76 Haw. at 170, 872 P.2d at 234. Thus, "[I]f the insured did something or ... failed to do something, and the insured's expected result of the act of omission was the injury, then the injury was not caused by an accident and therefore not ... within the coverage of the policy[.]" Id. (quoting Hawaiian Ins. & Guaranty Co. v. Blanco, 72 Haw. 9, 16, 804 P.2d 876, 880 (1991) (where insured fired a rifle in direction of the victim with the intent of frightening him, and bullet struck victim causing physical injury, such injury was something that a reasonable person should have anticipated and expected and was thus not accidental) (overruled on other grounds, Dairy Road Partners v. Island Ins. Co., 92 Haw. 398, 992 P.2d 93, (2000); Hawaiian Ins. & Guaranty Co. v. Brooks, 67 Haw. 285, 290-91, 686 P.2d 23, 27-28 (1984) (rejecting claim for defense by the driver of an insured automobile, despite his assertion that he did not "intend" or "expect" the rape of a passenger by another passenger in his vehicle's back seat) (overruled on other grounds by Dairy Road, supra; A.I.G. Hawaiian Ins. Co. v. Estate of Caraang, 74 Haw. 620, 643, 851 P.2d 321, 332 (1993) (applying same objective test to find no "occurrence" and therefore no coverage under automobile liability policy for shooter who killed

passenger of another automobile, even where shooter intended only to frighten, not to kill)).

34. In Blanco, the Court held that a homeowner's insurer properly denied coverage to an insured that fired a rifle in the direction of his neighbor, who was injured. The Court held that the shooting was not an accident, notwithstanding the insured's claim that he merely intended to frighten and not to harm the victim. The Court reasoned:

> Given the best possible interpretation, Garcia fired the rifle in Saturnino's direction intending to frighten him. That physical injury might result from such an action is certainly something which a reasonable man in Garcia's position should have anticipated and expected.
>
> We noted in Brooks, *supra*, that the reasonable expectation of policyholders regarding terms of insurance policies will be honored. Garcia could not reasonably expect to be covered or defended with respect to injuries to Saturnino which arose from his intentionally firing a rifle in Saturnino's direction to frighten him even though the particular injury was unexpected. That being so, with respect to Saturnino Blanco's bodily injury, there was no accident and therefore no occurrence and, hence, no duty to defend.

Blanco, 72 Haw. at 18-19, 804 P.2d at 881.

35. While Blanco was subsequently overruled on other grounds in Dairy Road, the overruling court made clear that the decision in all other respects remained good authority. Dairy Road, 92 Hawai'i at 422 n.13, 992 P.2d at 117 n.13.

13

36. Pursuant to Blanco, the appropriate inquiry in this case is whether a reasonable person in Santiago's position could have anticipated that injury might result from grabbing Easterling's backpack while he was holding onto it and driving off at a high rate of speed. Based on Santiago's criminal convictions of second degree robbery and first degree assault, this Court finds that any bodily injury sustained by Easterling on August 3, 2010 did not arise out of a motor vehicle "accident".

## Coverage For Potential Claims Is Precluded By The Policies' Intentional Acts Exclusions

37. The Auto Policy excludes coverage for an insured "who intentionally causes bodily injury or damage to property." With respect to the August 3, 2010 incident, Santiago was convicted of the offenses of assault in the first degree and robbery in the first degree, both of which include the element of intent.

38. Based on Santiago's criminal convictions, the Court finds that coverage for any third-party claim of bodily injury resulting from the August 3, 2010 Incident is precluded by the Auto Policy's intentional act exclusion.

39. Likewise, the analysis above regarding the intentional act exclusion is equally applicable to the PLUP. The PLUP excludes coverage for any bodily injury or property damage that is (a) either expected or intended by the insured; or (b) the result of any willful or malicious act of the insured.

40. Based on a jury's unanimous determination that Santiago knowingly and intentionally caused serious bodily injury to Easterling, Easterling's injuries were either expected or intended by Santiago, and therefore, the Court finds that the exclusion in the PLUP applies to preclude coverage for any claims arising out of the August 3, 2010 Incident.

## CONCLUSION

On the basis of the foregoing, this Court FINDS and RECOMMENDS that Plaintiffs' Motion for Default Judgment be GRANTED.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, January 19, 2012.



   /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

STATE FARM FIRE & CASUALTY CO, ET AL. V. SANTIAGO, ET AL., CV. NO. 11-00554 JMS-BMK; FINDINGS AND RECOMMENDATION GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT.

15